**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 11, 2014**

# In the Court of Appeals of Georgia

A14A0404. COPELAND v. THE STATE.

ANDREWS, Presiding Judge.

A Spalding County jury convicted Toby Tremayne Copeland of possession of marijuana more than an ounce (OCGA § 16-13-30 (j)), possession of marijuana with intent to distribute (OCGA § 16-13-30 (j)), possession of a firearm during the commission of a crime (OCGA § 16-11-106), and reckless conduct (OCGA § 16-5-60 (b)). Copeland appeals from the denial of his motion for new trial, as amended, challenging the admission of testimony purporting to explain police conduct and behavior common to drug activity, the effectiveness of trial counsel, and the sufficiency of the evidence. He also contends that the trial court erred when it ignored his post-trial request to weigh the credibility of the witnesses against him. Discerning no error, we affirm.

Viewed in the light most favorable to the jury's verdict, the evidence shows that on July 1, 2010, Lieutenant Curtis Keys of the Griffin Police Department began a seven-day surveillance of 236 Armstead Circle, Griffin, Georgia (the "property"). Lieutenant Keys had known of Copeland for ten years, was familiar with the car he drove, and believed he lived at the property because "that's the house I always see him at and always see his car at and he is normally in and out of that house." In addition, during the time the property was surveilled, Copeland would simply enter the property without knocking and would stay there for hours and through the night. The surveillance officers suspected drug activity at the property because they observed multiple vehicles coming and going from it, the vehicles typically staying not more than two minutes.

When Special Agent Tishe Dyer checked the utilities usage for the property, she learned that the power company had not authorized service at its address. Noting that lights were nonetheless being used, the police obtained a knock-and-announce search warrant.

Although Corporal Stan Phillips and Officer Jonathan McGhee knocked loudly upon executing the warrant, the use of a ram was required to gain access through the barricaded front door of the property. Once inside, the entry team found three

2

individuals: co-defendant Markevius Henley,[1] who had not been seen earlier in the week's surveillance, Henley's 8-year-old-son, and Copeland. Copeland emerged from the back of the property, cut away from the officers and ran into a bedroom where Phillips and McGhee "took him to the ground and secured him." There the officers found a box of .40 caliber ammunition, three cell phones, a television displaying live feed from the front door of the house, a police scanner tuned to the Griffin Police Department's frequency, a handgun hidden under the mattress of a bed a foot or two from where Copeland fell, a pair of scissors with a green leafy substance on it, a Hope Scholarship application on which Copeland's name appeared as the applicant, men's clothing, men's shoes, and a pill bottle bearing Copeland's mother's name. Two of the cell phones contained Copeland's digital picture; a cell phone which belonged to Henley had a text message on it that said "[j]ust got four purp for 14.50." Special Agent Dyer explained that her experience and training indicated that such a message translated to the type and quantity of marijuana in a drug transaction. Several messages in another cell phone found in the bedroom advised the recipient of police activity nearby. Delivered on July 8, 2010, approximately 23 minutes before the

---

[1] Henley was convicted of possession of marijuana less than an ounce (OCGA § 16-13-2 (b))

warrant was executed, the messages read: "Police setting some sh** up across the street near you"; "They next door in the back yard"; and "Shorty say don't go to your door. Shut it down today."

Under a couch in another bedroom, Corporal Phillips found a small plastic bag containing suspected marijuana. Corporal Chad Moxon, a K-9 handler, found a black trash bag containing three additional plastic bags containing suspected marijuana. The trash bag was concealed under brush and leaves in the woodline directly behind and "[m]aybe 20 yards" from the property. The contents of the bags seized in and outside the residence, as well as the substance taken from the scissors, later tested positive for marijuana having a net weight of 59.80 grams.

1. Copeland contends that the circumstantial evidence presented by the State was insufficient to show that he was in constructive possession of the marijuana and weapon at issue, requiring that his convictions be reversed. As to the marijuana seized behind the property, he makes the further argument that another person had equal access thereto, this also requiring reversal. These claims are not persuasive.

This Court determines the issue of evidentiary sufficiency under the standard of review set out in *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). "[T]he relevant question is whether, after viewing the evidence in the light

4

most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."(Citation omitted; emphasis in original.) Id. at 319 (III) (B). "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict." (Citation omitted.) *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

> A person who knowingly has direct physical control over a thing at a given time is in actual possession of it. A person who, though not in actual possession, knowingly has both the power and intention at a given time to exercise dominion or control over a thing is then in constructive possession of it. The law recognizes that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons shared actual or constructive possession of a thing, possession is joint.

(Citations and punctuation omitted.) *Vines v. State*, 296 Ga. App. 543, 545 (1) (675 SE2d 260) (2009). We find that the State presented evidence sufficient for the jury to reject Copeland's defenses and to find beyond a reasonable doubt that, because he knowingly had both the power and intention to exercise control over the contraband in and outside the property, he had constructive possession thereof.

5

"A finding of constructive possession of contraband cannot rest upon mere spatial proximity to the contraband, especially where, as here, the contraband is hidden." (Citations omitted.) *Mitchell v. State*, 268 Ga. 592, 593 (492 SE2d 204) (1997). And "[e]vidence of mere presence at the scene of the crime, and nothing more to show participation of a defendant in the illegal act, is insufficient to support a conviction." (Citations and punctuation omitted.) *Whipple v. State*, 207 Ga. App. 131, 132 (1) (427 SE2d 101) (1993). The State's evidence showed more than Copeland's mere presence in the property and spatial proximity to the contraband. The evidence was that Copeland resided in the property, and therefore not only had the power to exercise control over the property, *Dickerson v. State*, 312 Ga. App. 320, 321 (1) (718 SE2d 564) (2011), but also that he had the intent to do so. Intent to exercise control may be inferred from the circumstances. *Strozier v. State*, 313 Ga. App. 804, 808 (723 SE2d 39) (2012). The quantum of marijuana seized in conjunction with the presence of the weapon and ammunition found in the bedroom he ran to on being confronted by police, as well as the cell phones containing his photograph, the Hope Scholarship application in his name, the video security system, the police scanner, and his mother's pill bottle therein, linked Copeland to the charged offenses. There also was evidence that Copeland had been warned that the police were coming; that such

6

warning was received 23 minutes before the search warrant was executed, a time period sufficient to barricade the front door and hide the evidence. The foregoing, combined with other circumstantial evidence of intent, supported an inference that Copeland was connected to the contraband. *Vines*, supra, 296 Ga. App. at 545-547 (1).

"When the State's constructive possession case is based wholly on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused. Former OCGA § 24-4-6." (Punctuation omitted.) *Maddox v. State*, 322 Ga. App. 811, 814 (1) (746 SE2d 280) (2013). The circumstantial evidence presented by the State was consistent with the charge that Copeland had constructive possession of the marijuana and weapon; was sufficient to exclude every reasonable hypothesis save that of his guilt; and was sufficient to allow the jury to find beyond a reasonable doubt that Copeland had constructive possession thereof. *Jackson v. Virginia*, supra, 443 U. S. at 307.

Copeland also argues that Henley had equal access to the contraband rendering the evidence against him insufficient. See *Wilkerson v. State*, 269 Ga. App. 190, 191-192 (2) (603 SE2d 728) (2004) (presumption of constructive possession arising

7

from ownership or control of the premises can be overcome by evidence that other persons had equal access to the contraband found there). But absent "unrebutted affirmative evidence demanding a finding of equal access," the question of whether the presumption of possession has been overcome is for the jury to resolve. (Punctuation and footnote omitted.) *Mangum v. State*, 308 Ga. App. 84, 87 (1) n. 10 (706 SE2d 612) (2011). "While the presence of others in [or outside] the house may be viewed as inculpating those individuals, their presence need not be viewed as exculpating [Copeland]." (Citation omitted.) *Daugherty v. State*, 283 Ga. App. 664, 667 (1) (a) (642 SE2d 345) (2007). Copeland's arguments regarding equal access address the weight of the evidence, which the jury decided against him after being properly charged thereon. We find no error on such account.

Accordingly, the evidence was sufficient to authorize a rational trier of fact to find Copeland guilty, beyond a reasonable doubt, of possession of marijuana more than an ounce, possession of marijuana with intent to distribute, possession of a firearm during the commission of a crime, and reckless conduct endangering the bodily safety of Henley.

2. Copeland also argues that the trial court erred when it ignored his post-trial request to weigh the "general grounds" on his behalf as to the sufficiency of the evidence. See OCGA §§ 5-5-20 and 5-5-21. This argument is without merit.

OCGA § 5-5-20 authorizes the trial court to grant a new trial "[i]n any case when the verdict of a jury is found contrary to evidence and the principles of justice and equity," and OCGA § 5-5-21 empowers the trial court to grant a new trial "where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding." Read together, the statutes provide

> the trial court broad discretion to sit as a thirteenth juror and weigh the evidence on a motion for new trial alleging [the foregoing] general grounds. Our sovereign, the law, has in effect said to the trial judge: We charge you to let no verdict stand unless your conscience approves it, although there may be some slight evidence to support it.

(Citations and punctuation omitted.) *Walker v. State*, 292 Ga. 262, 264 (2) (737 SE2d 311) (2013). See also *Mills v. State*, 188 Ga. 616, 624 (4 SE2d 453) (1939); *Hargrave v. State*, 311 Ga. App. 852, 855 (2) (717 SE2d 485) (2011). It is therefore incumbent upon the trial judge to "consider some of the things that she cannot when assessing the legal sufficiency of the evidence, including any conflicts in the evidence, the

9

credibility of witnesses, and the weight of the evidence." See, e.g., *White v. State*, 293 Ga. 523, 524 (2) (753 SE2d 115) (2013). A trial court's discretion "should be exercised with caution, and the power to grant a new trial on this ground should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." *White v. State*, 312 Ga. App. 421, 423 (1) (718 SE2d 335) (2011); *Damerow v. State*, 310 Ga. App. 530, 532 (1) (714 SE2d 82) (2011); *Rutland v. State*, 296 Ga. App. 471, 475 (3) (675 SE2d 506) (2009).

Of note, "[t]he trial court does not exercise its discretion when it evaluates the general grounds by applying the standard of *Jackson v. Virginia*, supra, to a motion for new trial based on the general grounds embodied in OCGA §§ 5-5-20 and 5-5-21." *Walker*, supra, 292 Ga. at 264 (2); see also *Manuel v. State*, 289 Ga. 383, 386 (2) (711 SE2d 676) (2011) (trial court's use of the *Jackson v. Virginia* standard of review shows that the trial court failed to apply its discretion since the question of whether there is sufficient evidence to support the verdict is one of law, not of discretion). However, it is likewise true that

> Generally, in interpreting the language of an order overruling a motion for a new trial, it must be presumed that the trial judge knew the rule as to the obligation thus devolving upon him, and that in overruling the motion he did exercise this discretion, unless the language of the order

10

indicates to the contrary and that the court agreed to the verdict against his own judgment and against the dictates of his own conscience, merely because he did not feel that he had the duty or authority to override the findings of the jury upon disputed issues of fact.

*Copeland v. State*, 325 Ga. App. 668, 672 (3) (754 SE2d 636) (2014); *Moore v. Stewart*, 315 Ga. App. 388, 391 (3) (727 SE2d 159) (2012).

In this case, Copeland raised the "general grounds" encompassing OCGA §§ 5-5-20 and 5-5-21. Counsel for Copeland also presented brief argument to the trial court specifically citing OCGA §§ 5-5-20 and 5-5-21. In fact, Copeland's counsel engaged in a brief colloquy with the trial court concerning *Brockman v. State*, 292 Ga. 707, 713 (4) (739 SE2d 332) (2013) (evaluating "general grounds" argument), in which the trial court confirmed its familiarity with that decision. Ultimately, the trial court denied Copeland's motion for new trial as amended.

In reaching its conclusion, the trial court evaluated the record as well as the argument and evidence Copeland presented at the hearing on his motion for new trial. The trial court first noted that "I paid close attention during this trial, and I felt then and feel now that there was sufficient evidence to find the defendant guilty beyond a reasonable doubt." The trial court further found that Copeland presented no

11

evidence that caused it "to question the credibility of the witnesses who testified at trial." Finally, the trial court cited the "strength and totality of the evidence in this case" as an additional basis for denying Copeland's motion.

Although Copeland has not identified anything in the record suggesting that the trial court failed to apply the proper standard of review, see *Copeland*, 325 Ga. App. at 672, taken together, the trial court's findings confirm that the trial court properly exercised its discretion as the thirteenth juror and rejected Copeland's "general grounds" argument. See *Jimenez v. State*, 294 Ga. 474, 475 (754 SE2d 361) (2014); *Sellers v. State*, 325 Ga. App. 837, 842 (1) (b) (755 SE2d 232) (2014); *Copeland*, supra, 325 Ga. App. at 672; *Tolbert v. State*, 313 Ga. App. 46, 54 (2) (720 SE2d 244) (2011) (trial court considered witness credibility and decided issue against defendant). Compare *Alvelo v. State*, 288 Ga. 437, 438 (1) (704 SE2d 787) (2011) (trial court "explicitly declined to consider the 'credibility of witnesses'"); *Moore*, supra, 315 Ga. App. at 391 (trial court repeatedly stated that witness credibility was solely for jury and that court did not have authority "to usurp this power"). This case is therefore distinguished from recent decisions holding that trial courts failed to exercise discretion and weigh the evidence when faced with claims on the general grounds. See *White*, 293 Ga. at 525 (judgment vacated and remanded due to trial

12

court's repeated statement that it viewed evidence in the light most favorable to the verdict); *Walker v. State*, 292 Ga. 262, 264 (2) (737 SE2d 311) (2013) (same); *Rutland v. State*, 296 Ga. App. 471, 475 (3) (675 SE2d 506) (2009) (same). See also *Choisnet v. State*, 292 Ga. 860, 861 (742 SE2d 476) (2013) (judgment vacated and remanded where trial court reviewed evidence in light most favorable to verdict and failed to consider witness credibility); *Manuel*, supra, 289 Ga. at 386 (2) (judgment vacated and remanded where trial court "personally disagreed with the jury's verdict" yet found the evidence was sufficient to support the jury's verdict); *Alvelo*, supra, 288 Ga. at 438; *Moore*, supra, 315 Ga. App. at 391.[2] As a result, "this is not a case where it is necessary for us to remand to the trial court for consideration of this issue under the proper standard." *Sellers*, supra, 325 Ga. App. at 843 (1) (b).

3. Copeland next argues that he received ineffective assistance of trial counsel because counsel: (a) asked a question of a witness that brought Copeland's character into question; (b) failed to present witness testimony that Copeland lived at an address other than the property where the crimes occurred; (c) failed to present

[2] This Court expresses no opinion on the precise language necessary to demonstrate the exercise of the trial court's discretion. See *Sellers*, supra, 325 Ga. App. at 842 (1) (b); *Lavertu v. State*, 325 Ga. App. 709, 712 (1) (754 SE2d 663) (2014). Rather, this Court simply holds that the totality of the trial court's analysis in this case is sufficient.

13

witness testimony that a wooded area adjoining the property where the crimes occurred allowed for easy equal access for others to commit the crimes charged; and (d) failed to object to the equal access charge given by the trial court. Upon review, the record does not reveal any evidence to support Copeland's contentions.

> Under Georgia law,

> To obtain reversal of a conviction based on a claim of ineffective assistance of counsel, a defendant has the burden of proving that counsel's performance was deficient, and that, but for the deficiency, there was a reasonable probability the outcome of the trial would have been different. To establish deficient performance, a defendant must show that counsel's performance fell below an objective standard of reasonableness under the circumstances confronting counsel at the time without resorting to hindsight. In considering adequacy of performance, trial counsel "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

(Citations and punctuation omitted.) *Reyes v. State*, 322 Ga. App. 496, 502 (5) (745 SE2d 738) (2013). "Counsel's decisions on matters of tactic and strategy, even if unwise, do not amount to ineffective assistance of counsel." *McMorris v. State*, 263 Ga. App. 630, 634 (2) (a) (588 SE2d 817) (2003). "Indeed, tactical decisions by counsel will not form the basis for an ineffective assistance claim unless the decisions

14

are so patently unreasonable that no competent attorney would have chosen them." *Ware v. State*, 321 Ga. App. 640, 642 (3) (742 SE2d 156) (2013).

(a) Introduction of Copeland's Character.

First, Copeland contends that he received ineffective assistance of counsel because trial counsel asked a question that brought Copeland's character into question. Part of trial counsel's strategy was to demonstrate the history of Copeland's harassment by the Griffin Police Department. Thus, trial counsel asked an officer about shooting Copeland's dog during a prior raid. The question, coupled with trial counsel's extended response to an objection, permitted trial counsel to show that a member of the Griffin Police Department shot and killed Copeland's pet.[3] , During Copeland's hearing on his motion for new trial, trial counsel acknowledged that the question "incidentally" implicated Copeland's character, but also noted the importance of the history between the parties and that he specifically wanted to refer to the incident where Copeland's dog was killed to show harassment.

---

[3] Copeland also states that, following a brief bench conference, trial counsel failed to ask further questions concerning Copeland's history with the Griffin Police Department. This action is not specifically enumerated as error, however, and we find that Copeland's argument on this point is waived. See OCGA § 5-6-40; *Fradenburg v. State*, 296 Ga. App. 860, 863 (676 SE2d 25) (2009). Without passing on the nonenumerated error, we note that trial counsel indicated his decision to refrain from additional questioning concerning Copeland's harassment was a strategic decision.

15

Trial counsel's decision to demonstrate harassment of Copeland by law enforcement was a reasonable strategic decision. Accordingly, Copeland has failed to demonstrate error by trial counsel. Moreover, given the amount of testimony against him in this case, Copeland has not shown that the outcome of his trial would have been different save for trial counsel's singular reference to Copeland's history with the Griffin Police Department. As a result, Copeland has failed to demonstrate ineffective assistance of counsel in this instance.

(b) Failure to Present Testimony that Copeland Lived Elsewhere.

Copeland also argues that trial counsel should have presented testimony that Copeland lived at a location other than the property where the crimes occurred. While trial counsel suggested that he might have called such a witness "in hindsight," trial counsel also testified that he attempted to show Copeland did not live at the property.[4] The record supports trial counsel's testimony, which contains repeated cross-examination regarding Copeland's residence. [D]ecisions regarding which witnesses to call and all other tactical and strategic decisions are the exclusive province of the

[4] It is axiomatic that "the test regarding effective assistance of counsel is to be not errorless counsel, and not counsel judged ineffective by hindsight, but counsel rendering reasonably effective assistance." (citations omitted). *Adams v. State*, 322 Ga. App. 782, 786 (2) (746 SE2d 261) (2013).

16

lawyer after consultation with the client. And decisions regarding matters of trial strategy, whether wise or unwise, do not constitute ineffective assistance of counsel." *Reynolds v. State*, 267 Ga. App. 148, 151 (1) (598 SE2d 868) (2004). Here, Copeland has failed to show that his counsel's strategic decision to address the subject of Copeland's residence through cross-examination was unreasonable or deficient. Accordingly, Copeland has not demonstrated ineffective assistance of counsel.

(c) Failure to Present Testimony Concerning Equal Access.

Next, Copeland contends that trial counsel provided ineffective assistance by failing to call witnesses to demonstrate that a wooded area adjoining the property where the crimes occurred allowed for easy equal access for others to commit the crimes charged. Trial counsel testified that his theory of the case was based upon equal access and that Copeland did not possess any drugs. He further testified that he viewed photographs of the back yard and that it would not have been helpful to present testimony concerning the wooded area. Trial counsel also addressed equal access repeatedly through cross-examination of the State's witnesses. In view of this reasonable strategic decision, we cannot say that Copeland received ineffective assistance on this point. See *Reynolds*, supra, 267 Ga. App. at 151.

(d) Failure to Object to Equal Access Charge.

17

Finally, Copeland alleges that his trial counsel was ineffective for failing to object to the trial court's instruction on equal access. During its charge, the trial court instructed the jury that

> If you determine from the evidence that persons other than the defendants had equal opportunity to possess or to place the articles of contraband upon the described premises, then, and in that event, you should acquit the defendants, unless it is shown, beyond a reasonable doubt, that the defendants knowingly possessed the contraband, or shared possession and control with other persons and helped or procured the other persons in possessing and having control of the contraband.

Neither Copeland nor his co-defendant submitted requests for instructions, and neither Copeland nor his co-defendant objected to the trial court's instruction.[5] Copeland now complains that the trial court's use of the plural term "defendants" was error because "equal access would not apply between the two defendants." Trial counsel testified that he would have objected had he realized, after reading the charge carefully, that it included the plural term "defendants."

Generally, "when an error in the charge of the court is shown to exist, it is presumed to be prejudicial and harmful, and this court will so hold unless it appears

[5] Although trial counsel suggested he may have handwritten an instruction on equal access, any such request is not included in the record.

18

from the entire record that the error is harmless." *Overstreet v. State*, 250 Ga. App. 336, 340 (3) (551SE2d 748) (2001). However, "it is not necessary in considering a charge to assume a possible adverse construction, for a charge that is sufficiently clear to be understood by jurors of ordinary capacity and understanding is all that is required." *Feblez v. State*, 181 Ga. App. 567, 568 (2) (353 SE2d 64) (1987). As a threshold matter, use of the plural "defendants" in the equal access instruction, when a case involves co-defendants, has been previously affirmed by this Court. See *Gee v. State*, 130 Ga. App. 634, 636 (2) (204 SE2d 329) (1974). Moreover, any alleged confusion in the charge must be resolved against Copeland, inasmuch as the jury convicted Copeland of Counts 1 and 2 of the indictment, yet only convicted his co-defendant of a lesser included offense of Count 1 and acquitted him on Count 2. This result "lends itself to the conclusion that the jury did not harbor any confusion as to whether they could convict one of [the defendants] independent of the other." *Hill v. State*, 302 Ga. App. 291, 294 (2) (690 SE2d 677) (2010). See also *Overstreet*, supra, 250 Ga. App. at 340; *Feblez*, supra, 181 Ga. App. at 569. We therefore conclude that the charge as a whole is a correct statement of Georgia law and was sufficient to

convey its intended meaning to the jury;[6] accordingly, trial counsel was not ineffective in failing to object to it. See generally *Van v. State*, 294 Ga. 464, 466 (3) (754 SE2d 355) (2014) (failure to make meritless objection not basis for ineffective assistance).

Likewise, although not separately enumerated as error, the combination of these alleged errors did not result in ineffective assistance of trial counsel. See *Schofield v. Holsey*, 281 Ga. 809, 812 (642 SE2d 56) (2007); *Cobb v. State*, 309 Ga. App. 70, 80 (4) (709 SE2d 9) (2011). In sum, based upon the foregoing, the trial court did not err in denying Copeland's motion for a new trial based upon ineffective assistance of counsel.

4. Finally, Copeland contends that the trial court erred when it admitted certain evidence of local law enforcement's general practices in drug case investigations over his relevancy objection. In his enumeration of error, Copeland argues that the question "I would like for you to tell the jury how a drug case is worked here in the City of Griffin" was improper because it allowed "evidence to explain [an officer's]

---

[6] With the exception of the plural form, the instruction as given complied with the pattern instruction for equal access. See Council of Superior Court Judges of Georgia, Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (4th ed.), § 2.76.20.

conduct" and "to show that Copeland was a drug dealer[.]" This enumeration is without merit.[7]

As a threshold matter, "[e]vidence must relate to the questions being tried by the jury and bear upon them either directly or indirectly." OCGA § 24-2-1 (2011). Furthermore,

> unless the potential for prejudice substantially outweighs probative value, Georgia law favors the admission of relevant evidence, no matter how slight its probative value. . . . Indeed, even where the relevancy or competency is doubtful, the evidence should be admitted, and its weight left to the determination of the jury.

(Citations omitted.) *Pate v. State*, 315 Ga. App. 205, 213-214 (6) (726 SE2d 691) (2012). Despite Copeland's characterization to the contrary, the testimony cited in the enumeration does not implicate a specific instance of officer conduct or hearsay upon which such conduct may have been based. Rather, the challenged testimony focused upon the general course of a drug investigation conducted by the Griffin Police

---

[7] Copeland references additional questions concerning officers' "experience in the 'drug business.'" Although Copeland failed to include citations to the record for these additional questions, we have determined that there was no contemporaneous objection to them and that, as a result, any potential error has been waived. See *Jackson v. State*, 314 Ga. App. 806, 808 (3) (726 SE2d 63) (2012).

21

Department. As a result, questioning in this case was not a "trial by dossier" and did not suggest that the State concerned itself "with why an investigating officer did something." See *Teague v. State*, 252 Ga. 534, 536 (1) (314 SE2d 910) (1984).[8] See also *Foster v. State*, 314 Ga. App. 642, 648 (2) (725 SE2d 777) (2012). We therefore conclude that Copeland's argument that the background testimony was improper, based upon *Teague*, supra, 252 Ga. at 536, and as posited in his enumeration of error, is without merit.

*Judgment affirmed. McFadden and Ray, JJ., concur.*

---

[8] In fact, in the instance where the State attempted to introduce evidence in this manner, the trial court sustained Copeland's objection.